IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NATHAN MCGHEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  Case No. 21-cv-678-NJR |
| | ) |
| CHRISTINA NOTTINGHAM, | ) |
| REBECCA WALTON, ADAM | ) |
| DUNCAN, and FIELD SERVICE | ) |
| DEPARTMENT, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Nathan Mcghee, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Shawnee Correctional Center,[1] brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In his Complaint (Doc. 1), Mcghee alleges his parole was improperly revoked and he faced unconstitutional conditions of confinement. He seeks declaratory judgment and monetary damages.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen

---

[1] The docket indicates that Mcghee is currently at Shawnee Correctional Center, but a review of IDOC's inmate search indicates he is now at Stateville Correctional Center. *See* IDOC Inmate Search, https://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last visited March 1, 2022).

prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Mcghee makes the following allegations in the Complaint (Doc. 1): On or about September 11, 2020, Mcghee was subject to a lie detector test in Marion County, Indiana, and Adam Duncan falsified a probation violation report against Mcghee (*Id*. at p. 9). Duncan requested that Mcghee be arrested and returned to custody in Illinois (*Id*.). On October 26, 2020, Mcghee was apprehended in Indiana and held in an Indianapolis, Indiana, jail until November 12, 2020 (*Id*.). On October 29, 2020, Christina Nottingham and Rebecca Walton signed an IDOC warrant for his arrest on a parole violation (*Id*.). On October 12, 2020, he was transferred to IDOC at Stateville Correctional Center/NRC where he remained until March 1, 2021 (*Id*. at p. 10). Mcghee notes during this time the coronavirus pandemic was ongoing. He also notes that on December 15, 2020, the Prison Review Board resumed his parole. Mcghee alleges the parole violation warrant included false allegations and that Nottingham and Walton signed their approval to those allegations (*Id*.).

Mcghee further alleges that "agents" of the Field Service Department refused to investigate his proposed home site (*Id*. at p. 10). As a result, he remained in IDOC custody from December 15, 2020, until the date he filed his Complaint (*Id*.). He alleges all

Defendants acted with deliberate indifference in keeping him in IDOC custody in the middle of an ongoing pandemic due to the false allegations.

Mcghee alleges he was subject to an unreasonable search and seizure by Defendants unlawfully arresting and keeping him in IDOC custody on a false parole violation (*Id.* at p. 12). They also failed to approve or deny his homesite within the allotted time after his parole was approved by the Prison Review Board (*Id.* at p. 13). He alleges that continuing to keep him housed in IDOC violates his due process rights. He also alleges that he was subject to cruel and unusual punishment by being held in IDOC custody during the middle of an ongoing pandemic (*Id.* at p. 12). He describes the conditions as inhumane and unsafe, and notes he was unable to practice social distancing during the pandemic (*Id.* at p. 13).

## Discussion

There are a number of issues with Mcghee's Complaint. To the extent Mcghee alleges that his parole violation was based on false allegations those claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* prohibits a litigant from bringing a damages claim under Section 1983 that would necessarily invalidate a conviction or sentence, unless the conviction or sentence had been previously set aside in another proceeding. The Seventh Circuit has specifically applied the *Heck* bar in circumstances similar to Mcghee's circumstances. *See Hadley v. Quinn*, 524 F. App'x 290, 293-94 (7th Cir. 2013) (*Heck* applied to complaint that parole board improperly revoked plaintiff's parole); *Brown v. Hackbarth*, 445 F. App'x 865, 867 (7th Cir. 2011) (prisoner alleged parole board considered false information in his record in denying him parole); *Knowlin v. Thompson*, 207 F.3d 907,

909 (7th Cir. 2000) (*Heck* barred consideration of plaintiff's claims that he was improperly extracted from another state on parole violation warrant); *Antonell v. Fosteri*, 104 F.3d 899, 900 (7th Cir. 1997) (plaintiff arrested on allegedly invalid parole violator warrant and claimed documentation of warrant was inadequate). Therefore, Mcghee cannot proceed with a Section 1983 claim for money damages against the defendants until the Prison Review Board's decision is overturned or invalidated. Although a plaintiff may challenge his continued confinement in a federal habeas corpus action, he must first present all of his claims to the Illinois courts. This includes appealing any adverse decision to the Illinois Appellate Court and the Illinois Supreme Court. Thus, his claims against his parole officers are barred by *Heck* and shall be **DISMISSED without prejudice** to any subsequent state or federal claim Plaintiff wishes to pursue.

To the extent he argues that the Field Service Department violated his Eighth Amendment, and possibly Fourteenth Amendment due process rights by failing to approve or deny his home sites, the Illinois Field Service Department is not a "person" within the meaning of the Civil Rights Act and is not subject to a Section 1983 action. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Mcghee also fails to identify any *individual* that he contacted about his home sites or who at the Field Service Department was responsible for investigating his proposed sites. He just alleges that the Prison Review Board, though finding him guilty of the violations, approved his release (Doc. 1, p. 46) but his home sites have not been investigated. Without more information, Mcghee does not presently state a claim regarding his home site. *Childress v. Walker*, 787 F.3d 433, 439 (7th Cir. 2015) ("A plaintiff states a claim for an Eighth Amendment violation if he is

4

detained in jail for longer than he should have been due to the deliberate indifference of corrections officials.").

Further, as to Mcghee's condition of confinement claim, he merely alleges in conclusory fashion that he was housed in ways that prevented social distancing in the middle of a pandemic. In order to state a viable conditions of confinement claim, Mcghee must allege facts that satisfy both the objective and subjective components of an Eighth Amendment cruel and unusual punishment claim. For the objective component he must allege facts that show that the conditions deny him "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For the subjective component, he must allege facts that show Defendants had the culpable state of mind, that they acted with deliberate indifference to the conditions of confinement. *Farmer*, 511 U.S. at 834. "'Deliberate indifference' means subjective awareness." *Riccardo v. Rausch*, 375 F.3d 521, 526 (7th Cir. 2004). The relevant inquiry is whether Defendants "actually *knew* about [Plaintiff's] condition, not whether a reasonable official should have known." *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (emphasis added). Although housed at both Stateville and Shawnee, Mcghee fails to allege what the conditions were like at those facilities or who he told at the prisons about the conditions. Although he identifies his parole officers as liable for his placement in the unsafe conditions, he fails to allege that he informed them of the conditions he faced at either prison. Thus, his conditions of confinement claim is also **DISMISSED**.

Accordingly, Mcghee's Complaint is **DISMISSED without prejudice**. The Court will allow Mcghee an opportunity to amend his Complaint as to his condition of

confinement and parole home site claims. But because an amendment would not correct the problems presented by the claims barred by *Heck*, leave to amend as to his parole revocation is **DENIED**.

If Mcghee chooses to amend his Complaint, he is reminded that a successful Complaint generally alleges "the who, what, when, where, and how…." *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). If he does not know the name of a defendant, he should refer to them by a John Doe designation (i.e., John Doe #1, John Doe #2, etc.).

## **Pending Motions**

As to his motion for counsel (Doc. 3), Mcghee indicates he wrote one law firm about his case. He also states that, although he has some college education, he does not understand legal terms. But Mcghee has not demonstrated that he has made a reasonable attempt to obtain counsel on his own. He indicates he only wrote one law firm and that the letter never left the prison due to a technicality. There is no indication that he sought to resend the letter or that he wrote any other law firms. Thus, his motion is **DENIED**. Should he choose to move for recruitment of counsel at a later date, the Court directs Mcghee to (1) contact at least **three** attorneys regarding representation *in this case* prior to filing another motion, (2) include in the motion the name and addresses of at least three attorneys he has contacted, and (3) if available, attach the letters from the attorneys who declined representation. If he is unable to contact an attorney, he should include a statement explaining why he cannot meet this threshold requirement. Mcghee should also include in his motion a specific statement as to why he believes recruitment of counsel is necessary in his case.

**Disposition**

For the reasons stated above, Mcghee's Complaint is **DISMISSED without prejudice**. Because Mcghee may be able to state a viable conditions of confinement claim and claim regarding his home site, the Court **GRANTS** him leave to amend his Complaint.

Mcghee is **GRANTED** leave to file a "First Amended Complaint" on or before **March 29, 2022**. Should he fail to file his First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. Fed. R. App. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). The dismissal shall count as one of Mcghee's three allotted "strikes" under 28 U.S.C. § 1915(g).

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading, and Mcghee must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. The First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A.

Mcghee is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee remains due and payable,

regardless of whether he elects to file a First Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Mcghee is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED:  March 1, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**